**JEFFERSON PILOT BROADCASTING COMPANY, Plaintiff,**

v.

**HILARY & HOGAN, INC., J. Hilary Cox, Jr., J. D. Hogan, Jr., also known as J. Dan Hogan, Nancy P. Cox, John H. Cox, Sr., Defendants.**

Civ. A. No. 78–28–N.

United States District Court,
M. D. Alabama, N. D.

March 15, 1978.

Edmon L. Rinehart, Patterson & Rinehart, Montgomery, Ala., for plaintiff.

J. Knox Argo, Argo & Enslen, Montgomery, Ala., for defendants.

## MEMORANDUM

JOHNSON, Chief Judge.

This action is brought by plaintiff Jefferson Pilot Broadcasting Company against Hilary & Hogan, Inc. ("Hilary"), and J. Hilary Cox, Jr., J. D. Hogan, Jr., Nancy P. Cox, and John H. Cox, Sr., purportedly officers, directors, and controlling stockholders of the corporation. Douglas O. Benton, Director of the Alabama Bureau of Publicity and Information, also was originally joined as a defendant, but he was dismissed by this Court on February 24, 1978. Jurisdiction is based on diversity of citizenship. The action is submitted on defendants' motion to dismiss.

The complaint alleges that in June, 1977, Jefferson and Hilary entered into a contract whereby Jefferson agreed to deliver three commercials to Hilary for use by the State of Alabama in exchange for $23,-135.00. Claiming that Hilary has not paid the monies due on the contract, Jefferson now seeks damages for breach of contract. In addition, sometime after the contract was made, Hilary apparently became insolvent. Plaintiff's "Second Cause of Action" avers that, knowing the corporation was insolvent, defendants Cox, Jr., and Hogan, Jr., entered into a course of conduct designed to waste the assets of the corporation in fraud of its creditors. Specifically, it is alleged that the two borrowed $5,000 every two weeks in order to pay themselves "substantial" salaries, characterized by plaintiff as informal dividends or capital distributions to themselves. Additionally, defendants ordered that funds they received from the State of Alabama to pay for the commercials not be paid to plaintiff; instead, the funds were paid out to other creditors. The "Third Cause of Action" avers that defendants paid debts owed to some creditors but not to others, and thus gave an illegal preference to some creditors in hindrance of the ability of the others to collect their debts. The "Fourth Cause of Action" contends that defendants colluded with Benton to prefer some creditors. Plaintiff's final claim is that defendant Cox, Jr., bought quantities of supplies on behalf of the corporation which he then converted to his own use. Such conversion purportedly was a major cause of the corporation's insolvency. As a result, the ability

of the corporation to pay its creditors was greatly impaired. Plaintiff thus seeks compensatory damages of $23,135.00 and punitive damages of $50,000 from all of the defendants. Compensatory damages and punitive damages of $25,000 are requested from Cox, Jr. Defendants have moved to dismiss on two grounds: (1) that plaintiff is not qualified to do business in Alabama and, therefore, is barred from pursuing its claim; and (2) that the complaint fails to state a claim upon which relief can be granted.[1] Each of these grounds will be discussed in turn.

## I. Failure to Allege Qualification to Do Business in Alabama

Alabama Code § 10-2-254 provides that "[a]ll contracts or agreements made or entered into in this state by foreign corporations which have not qualified to do business in this state shall be held void at the action of such foreign corporation . . . ." Thus, under Alabama law, it is a defense to a contract action such as this one that the plaintiff has not qualified to do business in the state. This defense is also available in diversity cases brought in federal court. E. g., Associates Capital Service Corporation v. Loftin's Transfer & Storage Co., 554 F.2d 188 (5th Cir. 1977); Advance Industrial Security, Inc. v. William J. Burns International Detective Agency, Inc., 377 F.2d 236 (5th Cir. 1967). Although apparently no case has discussed the issue directly, it appears that plaintiff's failure to plead that it is qualified to do business in Alabama is not a jurisdictional defect depriving this Court of the power to hear the action. See Woods v. Interstate Realty Co., 337 U.S. 535, 69 S.Ct. 1235, 93 L.Ed. 1524 (upheld district court's dismissal on summary judgment); SAR Mfg. Co. v. Dumas Bros.

Mfg. Co., 526 F.2d 1283 (5th Cir. 1976) (affirmed dismissal after trial on merits). Moreover, although Rule 8(a) of the Federal Rules of Civil Procedure, which provides that the complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief," might conceivably require that this Court grant a motion to dismiss, affording plaintiff an opportunity to replead, the Court concludes that such a step is not necessary. All Rule 8(a) requires is that the defendant have fair notice of the plaintiff's claim and the grounds upon which it rests, Conley v. Gibson, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), a requirement which is satisfied without an allegation as to plaintiff's qualification to do business. Accordingly, the motion to dismiss on this ground must be denied. Defendants, of course, will have the opportunity to assert this defense at the proper time, such as on a motion for summary judgment.

## II. Failure to State a Claim Upon Which Relief can be Granted

In the first count of the complaint, plaintiff alleges that Hilary & Hogan breached a contract existing between the parties and requests compensatory damages. There is no doubt such an allegation, if true, will entitle plaintiff to relief. Therefore, as to the "First Cause of Action," defendants' motion to dismiss must be denied.

Evaluation of the other counts of the complaint is more complicated. It appears to be the law in Alabama that an officer, director, or controlling stockholders[2] of a corporation generally are not liable to corporate creditors for negligent or ultra vires actions which affect the ability

---

1. Although defendants do not expressly indicate that plaintiff's failure to allege qualification to do business in Alabama is part of their motion to dismiss, it will be so treated by the Court.

2. In general, the liability of a corporate stockholder is limited to the amount of any stock held for which the corporation has not been paid. Alabama Const. Art. XII, § 236; Ala. Code § 10-2-113. The limitation of liability enjoyed by stockholders, however, gives way when "the actions of those in control of the corporation denigrate the purpose of limited liability." Cohen v. Williams, 294 Ala. 417, 318 So.2d 279 (1975). In any event, since defendants' liability as controlling stockholders will not exceed their liability status as officers and directors, discussion will be limited to the liability of officers and directors.

of the corporation to pay its debts. *See Tennessee Chemical Co. v. Cheatham*, 217 Ala. 399, 116 So. 420 (1928) ("'Directors, agents and officers of a corporation are trustees for its stockholders, but not for its creditors, and this whether the corporation is solvent or insolvent,'" quoting *O'Bear Jewelry Co. v. Volfer & Co.*, 106 Ala. 205, 17 So. 525); *Force v. Age-Herald Co.*, 136 Ala. 271, 33 So. 866 (1902); 19 *Am.Jur.*2d, Corporations § 1350 (1965). Moreover, such persons lawfully can prefer some creditors over others. *See Birmingham Trust & Savings Co. v. Shelton*, 231 Ala. 62, 163 So. 593 (1935) ("a failing debtor, who is unable to pay all his debts may elect whom he will pay and pay them in full, although he thereby disables himself to pay anything to his other creditors.") The only ground upon which officers and directors can be liable to creditors is if they "fraudulently divert or destroy the corporate assets, which are subject to the payment of corporate debts." *Force, supra*, 136 Ala. at 278, 33 So. at 868. An act constitutes a fraud on the rights of the creditors if done with the intent to hinder or delay the collection of the claims. *Id.* at 276, 33 So. 866.

In its brief in opposition to defendants' motion to dismiss, Jefferson does not acknowledge the necessity for proving fraud to obtain relief, arguing instead that directors and officers owe the same fiduciary duty to creditors as they do to stockholders. Such a fiduciary duty is not recognized by the case law. *See Cheatham, su-*

pra; *Force, supra*. Plaintiff, however, claims that a fiduciary duty to creditors has been established by statute. First, it cites *Ala.Code* § 10–2–5.[3] Yet, that section does not support plaintiff's argument. On the contrary, it simply states that the legislature did not intend to repeal or modify any fiduciary obligations previously recognized by law; it does not establish any new fiduciary duties. Second, plaintiff contends a duty to creditors is embodied in *Ala.Code* § 10–2–201, which provides:

The assets of insolvent corporation constitute a trust fund for the payment of the creditors of such corporations which may be marshaled and administered in courts having jurisdiction in equitable matters in this state.

The simple answer to plaintiff's contention is that Section 10–2–201 does not give individual creditors a right to sue directors, but rather merely authorizes a procedure to protect an insolvent corporation's assets for the benefit of all creditors. Even if the statute is read to permit such suits, the case law makes clear that the trust doctrine does not extend the liability of officers and directors beyond the duty recognized by the common law. Indeed, it appears the doctrine only prevents such persons from conveying corporate assets in order to give *themselves* a preference over other creditors. *See Standard Chemical & Oil Co. v. Faircloth*, 200 Ala. 657, 77 So. 31 (1917); *City Bank & Trust Co. v. Leonard*, 168 Ala. 405, 53 So. 71 (1910).[4]

3. Ala.Code § 10–2–5 provides:

Neither an unqualified statement of rights or powers nor an unqualified grant of authority in this chapter shall be taken, or construed, to abrogate, repeal, displace, modify or impair the fiduciary obligations of directors or other officers or employees of any corporation or of stockholders having or exercising control thereof, or of any function thereof, whether by reason of ownership of a majority or other controlling interest therein or otherwise, or the jurisdiction of the courts to grant relief by way of injunction or otherwise, in order to forestall, prevent, correct, remedy or allow damages for fraud, oppression, imposition or other inequitable or remedial conduct in conformity with the applicable principles and practices of law.

4. In *Leonard*, the Alabama Supreme Court explained the nature of the trust doctrine, quoting from an earlier decision as follows:

the capital stock and assets of an insolvent corporation are, in a sense, a trust fund, of which the governing board are trustees for the benefit of the creditors, and . . . such governing board cannot convey or assign such corporate assets in such manner as to secure themselves, or to any members of their board, as a creditor of the insolvent corporation, a preference over the other creditors. This principle rests not alone on the fact that the assets are a trust fund, of which they are the trustees. It is largely supported by the undue advantage the knowledge they necessarily have of the corporation's embarrassments will secure to them over outside

When these legal principles are applied to the facts as averred in the complaint, only two of plaintiff's "cause[s] of action" can survive defendants' motion to dismiss. The "Second Cause of Action," at least the part which claims defendants Cox, Jr., and Hogan, Jr., paid themselves substantial salaries in an attempt to defraud the corporation's creditors, states a good claim. As discussed above, officers who waste corporate assets with the intent of hindering the rights of creditors are liable for their actions. Similarly, the "Separate Cause of Action Against J. Hilary Cox, Jr.," conceivably states a claim that Cox, Jr., converted corporate assets with the requisite intent to defraud the creditors. The fact that such conversion may have resulted in the corporation's becoming insolvent, however, does not state a claim unless the requisite intent is present. On the other hand, since directors and officers are under no duty to treat creditors equally, and lawfully can prefer some creditors to others, the third and fourth "cause[s] of action," which allege that defendants, by themselves and in collusion with Douglas Benton, preferred some creditors, do not state a claim entitling plaintiff to relief.

In summary, defendants' motion to dismiss must be denied as to plaintiff's first, second and fifth "cause[s] of action," but granted as to the third and fourth causes of action. Moreover, since none of the surviving causes of action are directed at defendants Nancy P. Cox and John H. Cox, Sr., they will be dismissed from the lawsuit unless plaintiff amends its complaint to assert claims against them.

An order will be entered in accordance with this opinion.

creditors, and by the fact that in paying or securing themselves no antagonistic interest is represented. They deal with themselves, and are thus both seller and buyer. Transactions of this kind by any one filling a fiduciary relation are voidable, if seasonably objected to by the beneficiary. We did not, however, go to the length of holding that directors of an insolvent corporation are so completely hampered by the trust relation they sustain as to disable them from paying or securing some creditors in preference to and at the expense of others to whom the corporation is indebted. The trust element of the relation they sustain to the assets, considered alone, points in this direction; and perhaps it would be the sounder policy if such were the rule. The very great weight of the authorities, however, is the other way, and we are not inclined to run counter to them.